## GEORGE W. CARLISLE v. JOHN YODER.

1. TAX-TITLE. *Levee taxes. When payable under act of 1867.*

The clause of the act of Feb. 13, 1867 (Laws, p. 238), requiring that the levee taxes therein imposed "shall be payable on or before the first day of May in each and every year from the first day of May, 1868," did not mean that the first payment of the taxes should be postponed to May 1, 1869. They became payable May 1, 1868, and annually thereafter.

2. SAME. *Failure of collector to give bond. Lapse of time. Act of 1860.*

Where lands subject to such taxes were sold to the state on the second Monday of May, 1868, for the taxes delinquent for 1867, such sale was subject to the act of February 10, 1860 (Laws 1859–60, p. 213), which declares that, "no suit to set aside any title acquired under such sale hereafter to be made shall be brought unless within five years from the date of sale." After such time, the title of a purchaser from the state could not be attacked because of the failure of the tax-collector to execute, before sale, the bond required by the said act of 1867.

3. SAME. *Possession. Limitation. Code 1880, § 539. Curative effect.*

Actual occupation for three years, after one year from the date of sale, of any land held under a conveyance by a tax-collector in pursuance of a sale for taxes, will, under code 1880, § 539, validate such title, regardless of the fact that the land, being held by the levee board, was not subject to sale, or the fact that the assessment-roll was not properly returned by the assessor. *McLemore* v. *Scales*, 68 Miss., 47.

FROM the chancery court of Tallahatchie county.
HON. W. R. TRIGG, Chancellor.

The facts are stated in the opinion.

The act of February 10, 1860 (Laws 1859–60, p. 213), provides in § 8 thereof that, " no suit to set aside any title acquired under such [tax] sale hereafter to be made shall be brought unless within five years from the date of the sale."

The decree was in favor of defendants, dismissing the bill, and complainant appeals.

*Nugent & Mc Willie,* for appellant.

The deed from Gwin and Hemingway, in the case of *Green* v. *Gibbs,* is made, by law, *prima facie* evidence of title, and complainant should have confirmation of the title unless the defendant, Yoder, has shown a superior title.

It is now too late to discuss the effect of a failure to give a collector's bond. *Ray* v. *Murdock,* 36 Miss., 692; *Powers* v. *Penny,* 59 *Ib.,* 5; *Sigman* v. *Lundy,* 66 *Ib.,* 522; *Paxton* v. *Valley Land Co.,* 68 *Ib.,* 739.

Defendant's title is founded upon a sale to the state for the taxes of 1881, which was referable to the assessment of 1879, adjudged to be void in *Fletcher* v. *Trewalla,* 60 Miss., 963.

Besides, the sale to the state March 6, 1882, is invalid, because, the land being held by the levee board, was not liable to be sold for the taxes of 1881. It was not sold by said commissioners of the chancery court until September 22, 1881, a few days before the taxes of that year were payable. It nowhere appears that the sale under the decree was confirmed before the 1st of February, 1882, which was necessary to make the land taxable for that year. It is true, the deed from the commissioners is made *prima facie* evidence of confirmation of the sale, but not of confirmation at any particular time. If the land was not subject to taxes for which it was sold, no title could pass by the sale, any more than the title of church, school or other exempt property. Section 539 of the code of 1880 cannot be construed to make three years' occupation confer title absolutely and in every event. It bars suits founded upon *defects,* but property exempt from

taxation cannot be sold at all. We do not criticise the proceedings, but say that no sale could be made.

*Bailey & Bailey,* for appellee.

1. There is no evidence of a deed to the levee board, except the recital in the conveyance from the commissioners, Gwin and Hemingway. The act of 1888, making such deeds evidence of title, although held to be constitutional, is not, in our judgment, constitutional in so far as it may be invoked to perfect or strengthen complainant's title, which has no evidence whatever to support it, except that created by the act itself. To give it effect would not, as against defendants, be due process of law. *Dingey* v. *Paxton,* 60 Miss., 1038. Surely, the legislature cannot make something *prima facie* evidence which was not in existence at the time of sale to the levee board.

2. There was no levee-tax due May 1, 1868. The act of 1867 provides that the tax therein levied shall be payable each year *from* the first day of May, 1868. The tax first payable was that accruing between May 1, 1868, and May 1, 1869.

3. Complainant's title is fatally defective, because the sheriff and tax-collector of the liquidating levee board for the year 1868 failed to give the bond required by said act on the first Monday in January. Having so failed, the office became vacant. *Vassar* v. *George,* 47 Miss., 713.

The act of 1860 cannot be invoked to cure this fatal defect, because it was repealed by the act of 1867, which, on this subject, declares that if the sheriff fails to give the proper bond, his office should become vacant. The two provisions are repugnant. Besides, the act of 1860 does not cure the defect based on the want of a proper bond by the officer. It does not prohibit a *defense,* but only bars a *suit* by one against the tax-title holder. We insist that the act does not bar defendant from showing the illegality of complainant's tax-title, because he failed to bring suit against such tax-title

within five years, for there was no evidence of such title until the passage of the act of 1888, which called the title into being, and made it *prima facie* valid.

4. Defendant's occupation of the land for more than three years has perfected his title, and it is now too late to urge that the assessment was not returned properly to the board. The said statute also cuts off all other objections to defendant's tax-title.

Argued orally by *T. A. McWillie*, for appellant.

COOPER, J., delivered the opinion of the court.

The appellant exhibited his bill in the chancery court of Tallahatchie county against the appellee, Yoder, and all other persons having or claiming any interest in the lands in said county, described as section 13, township 25, range 2, west, for the purpose of having confirmation of a tax-title to said lands, and also to cancel, as a cloud upon his title, a tax-title junior in date to his own, asserted by the defendant, Yoder, as to the south-east quarter of said section. Complainant's title consists, (1) of a sale of the lands for taxes, made on the 12th day of May, 1868, for taxes due to the board of liquidating levee commissioners for the year ending on said date, under the provisions of the act of February 13, 1867 (Laws of 1867, p. 237), at which sale the lands were struck off to said board; (2) a conveyance from Gwin and Hemingway, liquidating levee commissioners, acting under the decree in *Green* v. *Gibbs*, in the chancery court of Hinds county, of date September 22, 1881, to J. B. H. Hemingway and W. T. Townsend; (3) a conveyance by Hemingway and Townsend to complainant, of date December 10, 1889.

The title of the defendant to the south-east quarter of the section of land rests, (1) upon a sale of said land for taxes, made on March 6, 1882, for the state and county taxes of the year 1881, at which the lands were sold to the state of Mississippi; (2) a conveyance by the auditor of the state to

said defendant, of date July 26, 1883, this conveyance having been followed, as the evidence shows, by more than three years of actual possession by the defendant before the institution of complainant's suit.

It is not controverted that complainant has acquired the title of the board of levee commissioners, if it ever had title. His title is denied to any of the land, upon the ground of the invalidity of the title derived by the board under the sale of May 12, 1868, and, as to the land claimed by the appellee, because of the sale for taxes under which appellee claims.

The sale for taxes of May 12, 1868, is claimed to be invalid for two reasons; (1) because no taxes had accrued upon the lands at the date of the sale, and (2) because the tax-collector by whom that sale was made had failed to execute his official bond by the date prescribed by law, by reason of which it is claimed his office became vacant, and a sale thereafter made by him was void.

Upon the first ground of objection it is said that the language of the first section of the act of February 13, 1867, is at least of doubtful meaning, and does not clearly declare that a tax should be paid by the land-owners in the district before the first day of May, 1869, and that, since the law is one imposing a burden upon the citizen, it should be strictly construed in favor of the tax-payer.

The first section of the act is as follows: "*Be it enacted by the legislature of the state of Mississippi,* That there be, and is hereby, levied and assessed a uniform tax of five cents an acre, per annum, on each and every acre of land in the counties of Tunica, Coahoma, Bolivar, Washington and Issaquena, and in such part of DeSoto county as was included in the levee district formed by the act approved December 2, 1858; and a like tax of three cents per acre is hereby levied and assessed, per annum, on each and every acre of land lying in any other county included in said levee district, and which was subject to taxation by virtue of the provisions of the act of December 2, 1858, aforesaid; which tax, so levied

and assessed, shall be payable annually, on or before the first day of May in each and every year, from the first day of May, 1868, and shall continue," etc.

It is supposed by counsel that the words, "from the first day of May, 1868," indicate that the legislative purpose was that the first payment of the tax should be on the first day of May, next after the first day of May, 1868, which would be, of course, the first day of May, 1869. This construction of the act could not be accepted if we were confined to the first section alone. It is not even a plausible one, when the act is considered as a whole. The act was approved February 13, 1867, and became, by its terms, at once operative. Its first sentence begins by a declaration that there is, *in præsenti*, levied and assessed a tax of five cents per acre, per annum, on the land described. It is evident, therefore, that a tax was imposed upon the lands for the year intervening between the approval of the act and the first day of May, 1868. The only question was when, under the law, this first year's taxes were to be paid. If there was any doubt upon this point, it would be competent aid, in construing the statute, to refer to the uniform custom of the state, under all her revenue laws, to collect annually the taxes of the year, and, since it is distinctly provided that the taxes levied and assessed by the act are payable on or before the first Monday of May of some year, to accept as the date of the payment of the first year's taxes that first of May which followed next after the year the tax was levied and assessed. It is also to be noted that if the taxes for the year preceding the first of May, 1868, were not payable on that day, no time was fixed for their payment. Certain it is that not more than one year's taxes were due at one time, and in May, 1869, there would be due the taxes of the year 1868, and in 1870 the taxes of 1869, and so on. Unless, therefore, the taxes for the year 1867 were payable in May, 1868, they were not payable at all, under the language of the act. But the word "from" does not necessarily or primarily mean *after*, as is assumed in the argument of coun-

sel. Its primary meaning signifies rather origin or beginning, as given by approved lexicographers, and it was in this sense evidently used in the paragraph under consideration. What we have said would be applicable if we looked only to the first section of the act, but, if the whole act be considered, this construction of the first section is placed, we think, beyond question.

By the fourth section, the sheriff of each county is required, on or before the first day of January, A.D. 1868, and annually thereafter, to give bond for the security of the fund realized under the act. Why was bond required in January, 1868, if no funds could come to his hands until 1869, when the bond of that year would be given?

By the fifth section, a board of commissioners were to be appointed by the governor to liquidate the outstanding debts of the district; and by the sixth and following sections provisions are made for bonding the debts on the first day of June, 1867, payable in five annual installments, with interest from June 1, 1867, which bonds were to be paid " out of the moneys accruing under this act."

But for the fact that the question now decided has been heretofore presented in several cases in which it was not necessary to be decided, we should have disposed of it as one raised by counsel under the pressure of a bad case, and not seriously relied on. We have devoted more time to it than its importance warranted.

The second objection to complainant's title is unimportant. More than five years have elapsed since the sale, and, if it be true (which we do not decide), that the sale, when made, was invalid, because of the neglect of the collector to give a bond, as required by the act, that defect is cured by the provisions of the act of February 10, 1860, which was in operation when the sale was made. *Sigman* v. *Lundy*, 66 Miss., 522.

The complainant's title should, therefore, have been confirmed by the court below, unless the defendant's title to the south-east quarter of the section is established. It may be

conceded that the assessment-roll was not returned by the assessor at the time required by law, wherefore the sale of March, 1882, under which the defendant claims, was invalid, and that the lands, having been the property of the liquidat- ing levee board during the year 1881, were not subject to taxation and sale; and yet, the defendant, by reason of actual occupation, has secured title to the land he claims.

Section 539 of the code declares that, "actual occupation for three years, after one year from the day of sale, of any land held under a conveyance by a tax-collector, in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title, because of any defect in the sale of such land for taxes, or in any precedent step to said sale, saving to minors and persons of unsound mind," etc. The title of the defendant to the land claimed under the tax-sale has been perfected by the lapse of the statutory period, without re- gard to any defect of power in the collector to sell the land for taxes. An actual payment by the land-owner of the taxes for which the sale was made would not serve to defeat the title of the occupant of land claimed under a tax-sale, who has held possession for the period prescribed by the statute. The title becomes perfect by lapse of time, whatever its original infirmity may have been. *McLemore* v. *Scales*, 68 Miss., 47.

The appellant was entitled to the relief prayed, as to all the land except the south-east quarter of the section, as to which the appellee, Yoder, has title. The decree is therefore erroneous, in so far as the other lands are concerned, and must be reversed.

*Decree reversed, and cause remanded.*