THOMAS Y. OWEN ET AL. *v.* MONROE COUNTY ALLIANCE.

1. MONROE COUNTY ALLIANCE. *Change of membership. Methods of administration.*

   Though the membership and methods of administration of the Monroe County Alliance were changed from time to time, yet it remained the same organization and retained its property rights. (Former opinion, quoted in statement of facts.)

2. UNLAWFUL ENTRY AND DETAINER. *Code* 1892, §§ 4461, 4461*a*.

   The action of unlawful entry and detainer lies only in the cases specified in the statute. Code 1892, §§ 4461, 4461*a*.

3. SAME. *Equitable owner.*

   A party whose title to land is purely equitable, who has never been in possession and who has no contract with the occupant, express or implied, as to possession, cannot maintain an action of unlawful entry and detainer therefor.

4. SAME.    *Belief of owner.*

An equitable owner of land cannot maintain unlawful entry and detainer therefor against a party whose wrongful occupancy was from its inception adverse to him, and the belief of such owner that the occupant held as his agent is immaterial.

FROM the chancery court of Monroe county.

HON. BAXTER McFARLAND, Chancellor.

Owen and others, appellants, were the complainants in the court below, the Monroe County Alliance and others were defendants there. The case was before the supreme court heretofore—*Monroe County Alliance* v. *Owen,* 25 So. Rep., 876. The complainants, claiming to be the owners in fee of the lands in controversy, sought by their bill to establish a lost and unrecorded warranty deed therefor executed to them in 1889 by Timberlake, a defendant, to cancel a quitclaim deed to the same land subsequently executed by Timberlake to the Monroe County Alliance, also a defendant, and to enjoin the prosecution by the alliance of a pending action of unlawful detainer against them for the same land. The answer denied that the complainants owned the land in fee simple, and charged that they held the legal title as trustees for the alliance. The testimony of the complainants tended to show that although they earnestly endeavored to. buy the land for the alliance they were wholly unable to do so, and finding themselves so unable, they abandoned such efforts and afterwards purchased the property for themselves. The defendants' evidence, on the other hand, tended to establish that the complainants had never paid any of their own money for the land, that, until shortly before the beginning of the unlawful detainer suit, they recognized the right of the alliance to the property and made reports to it as its agent for the management of the same. The testimony also showed that the membership of the alliance in 1889 was different from the membership when the quitclaim deed was made and when the unlawful detainer suit was begun. The first decree of the court below established the lost

warranty deed and canceled the quitclaim deed. This decree, however, adjudged that complainants held the legal title as trustees for the alliance as its membership existed in 1889 at the time of their purchase, but not for the defendants claiming to represent said alliance. Both parties appealed from said first decree. The not heretofore officially reported opinion of the supreme court on the former appeal was delivered by Chief Justice Woods, and was in these words:

"We are of opinion that the equitable title to the property in controversy is in the present Monroe County Alliance. The alliance has never ceased to exist, although its membership has changed, and its methods of internal administration have been altered; and the organization of to-day and that of the year 1889 is one and the same. The fact of an irregular or unauthorized ratification of what is called the "Georgia Plan" by the county alliance of Monroe county is immaterial. The county alliance of Monroe need not have taken any action on the proposed change in the constitution of the state alliance. That change became effective by the action of the state alliance and the subsequent ratification of that action by the requisite number of county alliances, independently of what the Monroe County Alliance did or attempted or failed to do. Disagreeing with the finding of fact on this point made by the court below, the decree will be reversed, and remanded for further proceedings in accordance with this opinion."

After the remand of the case it was heard in the court below on motion to dissolve the injunction, which motion was sustained and the injunction wholly dissolved. The complainants again appealed to the supreme court from the interlocutory decree.

*E. H. Bristow* and *W. B. Walker,* for appellants.

We submit four propositions. First, defendants are not entitled to the possession of the land in controversy. Second, defendants are not entitled to maintain an action of unlawful

detainer for the possession of the property. Third, defendants are not entitled, at this time or in this proceeding, to a dissolution of the injunction. Fourth, defendants are not entitled to the $300 damages awarded them.

If there is any "trust" in this case, it is an implied "trust," simply arising out of the acts, the situation and character of the parties.

The trust, if any, created by these facts was plainly a trust that complainants should take and hold the legal title and possession of the lands forever, for the benefit of the alliance, who was entitled only to the usufruct and not to the possession.

If the circumstances made complainants trustees, they were joint tenants, with right of survivorship, holding the legal title and possession for the benefit of the alliance. Code 1892, § 244; *McAllister* v. *Plant,* 54 Miss., 106; Perry on Trusts, 302; *Croxall* v. *Sherard,* 5 Wallace, 268; *Croxall* v. *Sherard,* 5 Wallace, 282.

Again, it has been held that even in the case of gross violation by an agent of his fiduciary duty, and his purchase in his own name of property which he had been appointed agent to buy for his principal, if he pays the purchase money, the principal cannot recover possession of even the legal title without previously tendering a repayment of said purchase money. In *Sanford* v. *Hamner,* decided by the supreme court of Alabama (22 So. Rep., 117 and 115 Ala., 406), the above doctrine is expressly laid down.

The action of unlawful detainer, if a possessory action alone, does not involve title. Code 1892, § 4461.

It is only in those cases in which a party entitled to possession is "deprived" thereof by force, fraud, etc., or when such possession is withheld from the party entitled by another person "after the expiration of his right by contract, express or implied, to hold possession." Certainly defendant, or the alliance, have never had even the "scrambling" possession of the property denounced in *Blake* v. *McCray,* 65 Miss., 443.

We will, therefore, dismiss that branch of the remedy. Neither is there shown in this case any "contract," express or implied, under which complainants stipulated or were presumed to hold possession of the property for a limited period, which had expired. The action lies only in the cases specified in the statue. *McCorkle* v. *Garrell,* 55 Miss., 576.

An injunction should not be dissolved on an interlocutory hearing where such dissolution may cause irreparable damages. *Supervisors* v. *Paxton,* 56 Miss., 679; Hilliard on Injunctions, 110; High on Injunctions, sec. 900; *Alcorn* v. *Sadler,* 66 Miss., 221. While a suit is pending in equity involving both title and right of possession, a right of full adjudication in chancery is rendered useless by a possible verdict of three Dogberries or twelve bucolical jurors.

Suppose the action of unlawful detainer is turned loose upon us, and a jury, whose ways are past comprehension, finds a verdict with heavy damages against us in addition to the $300 decreed against us in this proceeding; and then suppose the chancery court decreed in our favor, decides there was no trust, title or right of possession in the defendants, and reinstates the injunction (which is "always possible, however improbable," as Judge Chalmers says in *Pinny* v. *Holberg,* 53 Miss., 569), the injury to us will be irreparable.

The dissolution of an injunction on interlocutory hearing rests in the discretion of the chancellor. *Miller* v. *McDougall,* 44 Miss., 682; Adams' Equity, 196, 356, and notes; *Bowen* v. *Hoskins,* 45 Miss., 183.

Defendants persistently claim that everything in the case, trust, beneficiary right, title and right of possession, is absolutely and irrevocably settled and become *res judicata,* with no conceivable possibility, in the nature of the case, of any change. We totally deny this. The late case of *Weiler & Haas* v. *Monroe County,* 74 Miss., 682, and 76 Miss., 492, is a striking illustration of the privilege of this court to change its

mind. *Wailes* v. *Johnson,* 3 Cush., 421; *Hanserd* v. *Grey,* 46 Miss., 75; *Penny* v. *Holberg,* 53 Miss., 568.

A decree for damages against complainants and sureties on the injunction bond cannot be rendered rightfully until the final hearing of the cause.

The rule adopted in *Penny* v. *Holberg,* 53 Miss., 567, is not changed by §§ 571, 572 and 573, of the code of 1892. *Goodbar* v. *Dunn,* 61 Miss., 624; Brame & Alexander's Digest, p 114.

*George C. Paine* and *W. H. Clifton,* for appellees.

The appellee here has the title to the property, and the right of possession in the unlawful detainer case is made out by showing title in appellee. It is well settled in this state that the action of unlawful detainer will lie where possession is deraigned from title. *Ragan* v. *Harrell,* 52 Miss., 818.

The fraudulent trustees were required to turn over the possession of the property to the appellee when from the usufruct of the property the purchase money and all charges on it for improvements were paid. The property was fully paid out during the early fall of 1896, and this suit was brought a few months afterwards. The relationship and duties of these trustees to appellees and this property raised an implied contract on their part to turn over this property when it was paid out.

Argued orally by *E. H. Bristow,* for appellants.

WHITFIELD, J., delivered the opinion of the court.

The bill filed by appellants had three objects. First, to restore the original deed from Timberlake, which had not been recorded, and had been destroyed; second, to cancel the quitclaim deed from Timberlake to the same grantees, for the same property, subsequently made; and, third, to enjoin the prosecution, at law, of the unlawful entry and detainer suit instituted by appellees, and convene all the parties in the chancery court for a final settlement there of all their respective rights. The

chancellor, in the first decree, restored the original deed, canceled the quitclaim deed, and held that the appellants were trustees *ex maleficio,* and should respond to the Monroe County Alliance when discovered, but that appellees were not the Monroe County Alliance. He held nothing as to the injunction. On appeal we dealt with but one proposition, and held, as to that, that the appellees were the Monroe County Alliance. We left undisturbed the chancellor's finding as to the two deeds, and as to the appellees being trustees *ex maleficio.*

This statement makes it clear that our decision was not *res judicata* of the question whether the action of unlawful entry and detainer lay. Did it lie in the state of case made by the record? It is obvious that the appellees never were in actual possession, hence they could not have been deprived of the possession in any way. It is equally clear that there was no "contract, express or implied," as to the possession between appellants and appellees, after the expiration of which the appellants held over. This action lies only in the cases specified in the statute. *McCorkle* v. *Yarrell,* 55 Miss., 576. It is true the Monroe County Alliance could only hold possession through an agent. But what the testimony shows is, not that appellants held as agents—that the relation of principal and agent was recognized and existed—but that, whatever the alliance thought, the appellants were secretly and wrongfully claiming the property as owners. The law did not allow them to stand in the character of owners, but, from their acts and conduct, stamped upon them their true character of trustees *ex maleficio.* This character they made for themselves by their wrongful conduct, and becoming thus trustees *ex maleficio,* they become liable, under the principles of equity applicable to those occupying that relation to others whom they have wronged, to answer in equity; and equity has ample power, on proper pleadings, to award the possession or the writ of assistance to make it effective. But all this is equitable ground of relief,

created by the wrongful conduct of the parties, not a right to the possession arising under § 4461 of code of 1892. We do not think the action of unlawful entry and detainer lay in the state of case made by the record. It follows that the injunction should have been retained until the final hearing.

The appellants having invoked the jurisdiction of the chancery court, and that court having now complete jurisdiction, it should dispose finally of the whole matter. The appellees have not asked affirmative relief. They should obtain leave to amend their answer and make it a cross bill, and they will thus be in an attitude to secure, if the proof warrants it, a decree for possession.

*Decree reversed, injunction reinstated, and cause remanded to be proceeded with in accordance with this opinion.*